United States District Court
Middle District of Florida
Jacksonville Division

**JOYCE MARIE CRUMLEY,**

    *Plaintiff,*

v.                                                                                No. 3:17-cv-973-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Joyce Marie Crumley brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying her applications for benefits. Under review is a decision by an Administrative Law Judge ("ALJ"). Tr. 16–29. The alleged onset date is April 1, 2010. Tr. 16. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 16–29, and the parties' briefs, Docs. 18, 19, 22, and not fully repeated here.

## I.    Standard of Review

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "This restrictive standard of review applies only to findings of fact," and "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including

determination of the proper standard to be applied in reviewing claims." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoted authority omitted).

## II.     Law & Analysis

### A.     *Agency Medical Consultants*

Crumley argues the ALJ erred by failing to include—without explanation—a limitation in the residual functional capacity ("RFC") that Crumley "may benefit from working with a nonconfrontational supervisor," despite that the ALJ purported to give "significant weight" to the opinions of two agency medical consultants— Lawrence Annis, Ph.D., and Jennifer Meyer, Ph.D.—who had recommended the limitation. Doc. 18 at 5–7.

Drs. Annis and Meyer provided opinions about Crumley's mental RFC. Tr. 94– 95, 105–08 (initial consideration), Tr. 142–47 (reconsideration).

On Crumley's "social interaction" and "adaptation" limitations, Drs. Annis and Meyer opined she is "moderately limited" in her ability to "interact appropriately with the general public," to "accept instructions and respond appropriately to criticism from supervisors," and to "respond appropriately to changes in the work setting." Tr. 95, 107, 144. Drs. Annis and Meyer disagreed on Crumley's ability to "get along with coworkers and peers without distracting them or exhibiting behavioral extremes," with Dr. Annis finding her "moderately limited," and Dr. Meyer finding her "not significantly limited." Tr. 95, 107, 144.

Drs. Annis and Meyer agreed Crumley is "not significantly limited" in her ability to "ask simple questions or request assistance" and to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Tr. 95, 107, 144. They also agreed she is "not significantly limited" in her ability to "sustain an ordinary routine without special supervision" and to "work in

2

coordination with or in proximity to others without being distracted by them." Tr. 94, 106, 143.

In the narrative section of the assessment, Dr. Annis opined Crumley "may be best suited for gainful employment in environments with limited interaction with coworkers" and with either "limited" or "only occasional" direct interaction with the general public, but she "retains the ability to adapt to moderate interpersonal demands as needed during the course of a workweek." Tr. 95, 107. He added, "She may benefit from working with a nonconfrontational supervisor." Tr. 95, 107. Regarding her concentration, he stated, "Additional supervision may be required when working on new and multi-step assignments." Tr. 106. He further opined Crumley "may have some difficulty adapting to change but will be able to function within a stable work assignment. [She] should be better able to adapt to changes after an initial employment period." Tr. 107.

In the narrative section of the assessment, Dr. Meyer opined Crumley "seems capable of working without excessive supervision or assistance and working with others, and of sustaining attention to complete simple, repetitive tasks for 2-hour segments over an 8 hour work day." Tr. 143. She observed Crumley "reported interpersonal difficulties" and opined Crumley "appears capable of engaging in brief, structured interactions with others but seems best suited for work in settings that require minimal social interaction, especially with unfamiliar persons. [She] would respond best to non-confrontational supervision." Tr. 144. Dr. Meyer opined Crumley "would have difficulty appropriately responding to changes in high-stress and fast-paced work environments. However, [she] appears capable of completing [simple routine tasks] in most settings and adapting to simple/gradual changes in the work environment." Tr. 144. Dr. Meyer further opined Crumley's level of emotional distress is "expected to decrease" once she gets familiar with "the work environment, job duties, and coworkers." Tr. 144.

3

In the decision, the ALJ stated the weight she was giving Dr. Annis's and Dr. Meyer's opinions and the reasons for the weight:

> Physicians contracted for by the State Agency reviewed the evidence and offered their expert opinion that … [Crumley's] psychiatric problems did not cause more than a "moderate" functional limitation (Exhibits 1A, 2A, 5A, 6A). The opinions of these reviewing doctors have been carefully reviewed and their "expert opinion evidence" has been considered in accordance with [Social Security Ruling ("SSR")] 96-6p. In this instance, these opinions are given significant weight for several reasons. First, these are disability specialists who had the bulk of the evidence from the treating sources and consultative examiners that now comprise the official record in this case. They considered all of the objective facts at the time they rendered their opinion. Secondly, the evidence in total does support in general the conclusions put forth by the State Agency doctors. The evidence is part of the record and entitled to the same probative value accorded "expert opinion" evidence.

Tr. 26. For the RFC, the ALJ found Crumley can perform medium work with limitations:

> [S]he can occasionally climb ladders, ropes, and scaffolds and frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead with her left upper extremity. She must avoid even moderate exposure to poorly ventilated areas and environmental irritants such as fumes, odors, dusts, and gases. She must avoid concentrated exposure to the use of moving machinery and exposure to unprotected heights. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work related decisions and routine work place changes. She is limited to only occasional interaction with the public and coworkers, and only occasional supervision.

Tr. 20. The ALJ explained the reasons for placing these limitations in the RFC:

> [T]he RFC includes restrictions to account for mild to moderate mental impairment limitations. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes. The claimant is limited to only occasional interaction with the public and coworkers, and only

4

occasional supervision. This is consistent with the claimant's ability to venture out into public for appointments, shopping, and for public transportation. The claimant has also been capable of renting out a room, and traveling in an ice cream truck with her friend.

Tr. 25–26.

Crumley contends the ALJ violated "the fundamental principle of *accept and include* or *reject and explain*" by placing significant weight on Dr. Annis's and Dr. Meyer's opinions but failing to explain or include a limitation that Crumley have a "nonconfrontational supervisor." Doc. 18 at 5–7 (emphasis in original). The Commissioner responds the ALJ gave the opinions only "significant weight," not "controlling weight," and therefore did not have to "adopt and recite" all of the opinions on a "wholesale" basis. Doc. 19 at 14.

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2012). To determine a claimant's RFC, the ALJ must consider all record evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2012). But an ALJ need not refer to all evidence in the decision, so long as the decision makes clear she considered the claimant's "medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

An ALJ evaluates every medical opinion she receives. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012). An ALJ must state with particularity the weight given to each medical opinion and the reasons for the weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Unless the ALJ gives a treating source's opinion controlling weight, the ALJ will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012). An ALJ need not explicitly address each factor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

5

When determining the RFC, an ALJ may rely on the opinions of agency medical consultants, who are highly qualified and whose opinions may be entitled to great weight if the evidence in the record supports them. SSR 96-6p, 61 Fed. Reg. 34466, 1996 WL 362203 (July 2, 1996) (rescinded by SSR 17-2p, effective March 27, 2017); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) ("The weight due to a non-examining physician's opinion depends … on the extent to which it is supported by clinical findings and is consistent with other evidence.").

The Programs Operations Manual ("POMS") directs agency medical consultants to describe "the degree and extent" of a claimant's "capacity or limitation" in narrative format. POMS DI § 24510.063(B)(2) (1994). It therefore is the narrative written by the medical consultant, rather than the summary conclusions, that the ALJ must use as the assessment of a claimant's RFC. *See* POMS DI § 25020.010(B)(1) (2007); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (evaluating whether doctor's narrative opinions rather than summary conclusions support ALJ's findings).

Restricting a claimant to only occasional interaction with the public, coworkers, and supervisors can account for restrictions related to social interaction and work adaptation. *See, e.g., Shelton v. Colvin*, 663 F. App'x 690, 694 (10th Cir. 2016) (RFC limiting claimant to working "in relative isolation with limited contact with the general public and coworkers" adequately accounted for claimant's "moderate difficulties with social functioning" and inability to "relate to the general public"); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (RFC limiting claimant to "only occasional interaction with the public" adequately accounted for claimant's moderate limitations in ability to interact appropriately with the public and marked limitations in ability to relate to others); *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) (RFC limiting claimant to "only occasional contact with supervisors, co-workers, or the general public" adequately

accounted for claimant's moderate restrictions in "ability to interact with the public, supervisors").

Here, the ALJ stated the weight ("significant weight") she was giving Dr. Annis's and Dr. Meyer's opinions. Tr. 26. She "carefully reviewed" their opinions that Crumley had "moderate" limitations in social interaction and work adaptation. Tr. 26. By including in the RFC that Crumley can perform "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work related decisions and routine work place changes," and with "only occasional interaction with the public and coworkers, and only occasional supervision," Tr. 20, she substantially incorporated the opinions, Tr. 95, 106, 107, 144, in accordance with the "significant weight" she gave them.

The ALJ did not discuss the observations that Crumley "would respond best" and "may benefit from" a nonconfrontational supervisor, Tr. 95, 107, 144, but neither did she reject those observations, which were explained not as a firm limitation but as an ideal situation. Drs. Annis and Meyer made related findings about Crumley's capabilities—that she should have "limited interaction with coworkers" and either "limited" or "only occasional" direct interaction with the general public; she "retains the ability to adapt to moderate interpersonal demands as needed during the course of a workweek"; she may require "[a]dditional supervision … when working on new and multi-step assignments"; she "seems capable of working without excessive supervision or assistance and working with others"; she "appears capable of engaging in brief, structured interactions with others but seems best suited for work in settings that require minimal social interaction, especially with unfamiliar persons"; she "appears capable of completing [simple routine tasks] in most settings and adapting to simple/gradual changes in the work environment"; and she has a level of emotional distress that is "expected to decrease" once she gets familiar with "the work environment, job duties, and coworkers." Tr. 95, 106, 107, 144. The RFC determination is consistent with the opinions.

7

The opinions of Drs. Annis and Meyer are substantial evidence that Crumley retains the ability to perform work tasks despite limitations in her social interaction and work adaptation, and restricting her to "only occasional interaction with the public and coworkers, and only occasional supervision," Tr. 20, adequately accounts for those limitations. *See Shelton*, 663 F. App'x at 694; *Reeves*, 618 F. App'x at 275; *Martin*, 547 F. App'x at 160.

Crumley's separate but related argument—that the vocational expert's ("VE") testimony does not constitute substantial evidence to support the findings at steps four and five because the hypothetical question to the VE did not include the "work-preclusive" limitation suggested by Drs. Annis and Meyer, Doc. 18 at 7—fails for the same reason. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (finding an ALJ does not have to include findings in the hypothetical that are not part of a sufficient RFC). Crumley does not dispute the hypothetical contained the same limitations as in the RFC. Doc. 18 at 7. The VE's testimony therefore served as substantial evidence.

Remand to reconsider Dr. Annis's and Dr. Meyer's opinions is unwarranted.[1]

## B. Therapist's Opinion

Crumley argues the ALJ improperly evaluated the opinion of her therapist, Sharon Griffith, LMHC, of Beaches Community Healthcare. Doc. 18 at 8–25.

Crumley was treated at Beaches Community Healthcare by Griffith and others from at least 2012 through April 2016. Tr. 403–83, 484–562, 563–633, 639–52, 653–98. In Griffith's notes from an April 7, 2016, follow-up evaluation, under the heading, "Person's report of progress since last session," Griffith states it is "difficult" for

---

[1] Crumley argues that the requirement for a "nonconfrontational supervisor" would be a workplace accommodation, and that accommodated work may not be considered. Doc. 18 at 7. Because the RFC suffices without that requirement, the ALJ did not—and did not need to—take it into account as an accommodation. Tr. 28–29.

8

Crumley "to focus on the here and now," and that she "gets overwhelmed very easily and needs the support of others to help with decision making," and opines that—due to post-traumatic stress disorder ("PTSD") and anxiety—Crumley is incapable "of maintaining even a [part-time] job at this point in her life." Tr. 664.

The ALJ reviewed Crumley's treatment at Beaches Community Healthcare, contained in Exhibits 5F, 6F, 7F, 9F, and 10F (Tr. 403–83, 484–562, 563–633, 639–52, 653–98), summarizing the exhibits and findings, Tr. 23–28. The ALJ recounted Griffith's treatment of Crumley in 2016, including at the April evaluation:

> Because of transportation issues, the claimant elected to have mobile therapy at her home, which began in February and continued in March 2016 as well. She reported conflict with her ex-boyfriend/roommate. She denied drinking excessively. She had fair grooming and hygiene, was tremulous, had a tearful affect, and had a voice tremor. She was noted as rambling, per her usual. Mood was depressed, and she was anxious. She was ruminative about her past abuse. She reported issues with a parole violation for failure to take offender classes, and she reported that she was stressed about a new home being built on the property next door. She reported that she was riding around with her friend on her ice cream truck route to get away from the noise/construction. [Ethyl alcohol, or ethanol] use disorder, moderate to severe; PTSD; [major depressive disorder]; and cluster B [personality disorder] traits were diagnosed. Ongoing counseling, psychotropic medication management, and abstinence from alcohol were recommended. Continued records also note that the claimant kept alcohol in the house. Her counselor, Sharon Griffith, opined that she did not feel the claimant capable of maintaining even a part time job due to ongoing PTSD symptoms and anxiety. During her April 2016 visit, the claimant had improved grooming and hygiene. She was reported as very anxious, which was noted as contributing to her poor memory and focus. (Exhibit 10F).

Tr. 24–25. In discussing opinion evidence, the ALJ stated the weight she was giving Griffith's opinion and the reasons for the weight:

> As for the opinion evidence, a treating source opinion was submitted from a counselor. As a nonacceptable medical source, the opinion is considered as to the severity of the claimant's impairments. The claimant's counselor, Sharon Griffith, opined that she did not feel the claimant capable of maintaining even a part time job due to ongoing

9

> PTSD symptoms and anxiety. While the claimant does have mental impairment symptoms, there is also a noted history of noncompliance, with good response to compliance with treating provider recommendations. Furthermore, the claimant has been capable of maintaining a home, renting a room to tenants, having friendships, using public transportation, and caring for personal hygiene needs despite a history of noncompliance. Therefore, little weight is given to this opinion, as disabling limitations are not established for 12 continuous months, as well as and when the claimant is compliant with treating provider recommendations.

Tr. 26.

A "medical opinion" is a statement from an "acceptable medical source" that reflects judgment about the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2012). An acceptable medical source is a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, or qualified speech-language pathologist. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2013). An opinion on an issue that is dispositive of a case, such as whether a claimant is disabled or can work, is not a medical opinion because it is on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Generally, an ALJ gives more weight to an opinion from a "treating source," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2012), who is a physician, psychologist, or other "acceptable medical source" who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2012).

An ALJ may consider evidence from other sources not listed as "acceptable medical sources," including therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). That evidence may show the severity of an impairment and how it affects a claimant's ability to work but cannot establish the existence of a medically determinable impairment or constitute a "medical opinion." SSR 06-03p, 2006 WL 2263437 (Aug. 9, 2006). The record "should reflect the consideration of opinions" from other sources, and the ALJ should explain the weight given to them "or otherwise ensure that the

discussion of the evidence … allows a claimant or subsequent reviewer to follow [her] reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

While acknowledging that Griffith is a "non-acceptable medical source," Crumley argues the ALJ improperly evaluated Griffith's opinion, emphasizing she was Crumley's therapist "throughout the relevant period" and has consistently found "significant limitations" in Crumley's mental status. Doc. 18 at 8. Terming Griffith a "treating source" whose opinion is due "more weight," she contends the ALJ did not apply the required factors to consider medical opinions under 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012) and "instead, impermissibly supplanted the opinion evidence with her own lay opinion." Doc. 18 at 10–12. Crumley discounts the ALJ's reasons for giving little weight to Griffith's opinion,[2] Doc. 18 at 12–13, and details the records from Beaches Community Healthcare to demonstrate Griffith's testimony is supported by the record, Doc. 18 at 14–24.

The Commissioner responds Griffith's opinions were not due any "special significance or consideration" because she is not an "acceptable medical source" and "ALJs generally are not required to articulate the specific reasons for discounting opinions from other sources." Doc. 19 at 8. The Commissioner further argues Griffith's opinions were legal conclusions reserved for the Commissioner and were based on "subjective reports about what [Crumley] could and could not do." Doc. 19 at 9. The Commissioner details evidence to show the ALJ properly considered the opinion, which was inconsistent with other evidence. Doc. 19 at 10–13.

---

[2]Citing SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (effective March 28, 2016)—which Crumley agrees applies to the evaluation of a claimant's subjective symptoms—Crumley argues the ALJ erred by using her "history of noncompliance, with good response to compliance," Tr. 26, to partly discount Griffith's opinion without having considered possible reasons for noncompliance. Doc. 18 at 12. Even assuming error in the ALJ failure to express consideration of possible reasons for noncompliance, any error is harmless. As discussed, the ALJ had ample reason to discount Griffith's opinion, and substantial evidence supports the ALJ's finding.

As Crumley acknowledges, Doc. 18 at 8, as a mental health counselor, Griffith is not an "acceptable medical source" under the regulations then in effect, 20 C.F.R. §§ 404.1513(a), 416.913(a) (2013). Thus, Griffith could not give a "medical opinion." *See* 20 C.F.R. §§ 404.1527(a)(2) & (c)(2), 416.927(a)(2) & (c)(2) (2012). Because Griffith provided no medical opinion, the ALJ would have committed no error even if she had not considered the factors in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2012), as Crumley alleges, Doc. 18 at 10–13. In any event, Griffith's opinion that Crumley is unable to work more than part time would not be a medical opinion because it is on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012).

The ALJ considered Griffith's opinion, articulated the weight she was giving the opinion ("little weight"), and explained the reasons for choosing the weight (Crumley's "history of noncompliance, with good response to compliance with treating provider recommendations"; Crumley's daily activities; and "disabling limitations are not established for 12 continuous months"). Tr. 26. Substantial evidence supports those reasons, as the Commissioner details. Doc. 19 at 10–13. Contrary to Crumley's argument, Doc. 18 at 10–12, the ALJ did not improperly substitute her own opinions for Griffith's opinions; rather, she properly weighed Griffith's opinions against other record evidence and based the weight given to the opinions on appropriate considerations.[3]

Remand to reconsider Griffith's opinion is unwarranted.

---

[3]Crumley argues the ALJ could have re-contacted Crumley's "treating sources, arranged for a consultative examination, scheduled a review of the record and testimony by a medical expert, or sent the updated record to the State Agency for an updated review that included Ms. Griffith's opinion and recent treatment records." Doc. 18 at 25. Because the Court finds no error in the handling of Griffith's opinion, and for the reasons the Commissioner observes, Doc, 19 at 6–7, remand for those actions is unwarranted.

## III. Conclusion

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Joyce Marie Crumley and close the file.

**Ordered** in Jacksonville, Florida, on March 29, 2019.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record